UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WISE MAN BREWING, LLC,

        Plaintiff,                                Case No. 1:22-cv-10458

v.                                             Honorable Thomas L. Ludington
                                                   United States District Judge

THREE BRIDGES
DISTILLERY AND TAPROOM, LLC,

        Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On March 3, 2022, Plaintiff Wise Man Brewing d/b/a Three Bridge Brewery brought this trademark-infringement case against Defendant Three Bridges Distillery and Taproom.

Twelve days later, Plaintiff filed a motion for a preliminary injunction styled as a motion for a temporary restraining order. The Motion requests this Court to require "Defendant to appear and show cause, if any, why a Temporary Restraining Order should not enter."

The Motion for Preliminary Injunction will be denied because Plaintiff's trademark "Three Bridge" appears to be geographically descriptive without a secondary meaning.

**I.**

Plaintiff Wise Man Brewing, a Michigan LLC located in Menominee, Michigan, is suing Defendant Three Bridges Distillery and Taproom, a Michigan LLC located in Midland, Michigan. ECF No. 1 at PageID.1–2. Plaintiff "produces and sells beer and related goods to consumers under the trade name[s] 'Three Bridge Brewing Company,' 'Three Bridge,' and 'III Bridge Brewing Co.'" *Id.* at PageID.2.

Defendant claims to have brewed beer and distilled spirits under the tradename "Three Bridges Distillery and Taproom" since at least 2011. ECF No. 15 at PageID.97. Defendant also alleges, with supporting documentation, to have "continually operated the website threebridgesbrewing.com since December 18, 2011." *Id.* Defendant adds, with supporting documentation, that it "created the Facebook page 'Three Bridges Distiller and Taproom' on September 26, 2011." *Id.* And though Defendant began to open a distillery and taproom in January 2019, it finally opened Three Bridges Distillery and Taproom on March 3, 2022. *Id.*

On June 14, 2016, Plaintiff trademarked the name "'THREE BRIDGE' in connection with beer," and on January 26, 2021, Plaintiff trademarked the following logo "in connection with beer; beer mugs; beverage glassware, drinking glasses; glass beverageware; glass mugs; growlers; mugs; drinking steins; hats; shirts; and T-shirts":



ECF No. 1 at PageID.3; *see also* THREE BRIDGE, Registration No. 4,979,621; III BRIDGE BREWING CO., Registration No. 6,256,388.

In March 2020, Plaintiff learned on Facebook that Defendant intended to open "Three Bridges Distillery and Taproom" in Midland, Michigan. ECF No. 5 at PageID.36. Plaintiff repeatedly contacted Defendant requesting that it not use the words "Three Bridges," after which the parties "engaged in correspondence and attempted without success to settle their dispute." *Id.* at PageID.37. Despite Plaintiff's repeated attempts to contact and negotiate with Defendant, including serving a notice of trademark infringement, Defendant opened Three Bridges Distillery and Taproom in March 2022. *Id.* at PageID.37–38; *see* ECF Nos. 5-5; 5-6.

According to Plaintiff, Defendant's use of the mark "Three Bridges Distillery and Taproom" "deceptively and falsely suggests a connection or affiliation between" Plaintiff and Defendant. ECF No. 1 at PageID.5. Plaintiff contends that Defendant is "very similar" to Plaintiff because they both "manufacture[] and sell[] beer and alcoholic spirits." *Id.* at PageID.4. Plaintiff adds that their marks are similar "in sound, appearance, meaning, and commercial impression." *Id.* Further, "Defendant is not affiliated with Three Bridge and has not obtained permission or a license to use the Three Bridge Marks." *Id.* Plaintiff claims to have repeatedly demanded "Defendant's acknowledgement and awareness of Three Bridge's use and ownership of the Three Bridge Marks." *Id.* at PageID.4.  For those reasons, Plaintiff argues that "Defendant's use of its materially identical Mark in connection with Defendant's Goods is likely to cause consumer confusion or mistake as to the source or origin of Defendant's Goods." *Id.*

On March 3, 2022, Plaintiff filed a seven-count complaint, alleging (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) false designations of origin or false descriptions under the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark infringement under Michigan law; (4) unfair competition under Michigan law; (5) unjust enrichment under Michigan law; (6) misappropriation of goodwill under Michigan law; and (7) injunctive relief under the Lanham Act, 15 U.S.C. § 1116, 1117(a). *Id.* at PageID.5–11.

Roughly two weeks later, Plaintiff filed a motion for a preliminary injunction to permanently preclude Defendant from "us[ing] the words 'Three Bridges' or similar wording that infringes upon, or is confusingly similar, to" Plaintiff's federal and common-law trademarks. ECF No. 5 at PageID.32–33.

## II.

### A.

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Four factors determine whether a court should grant a preliminary injunction:

(1) the movant's likelihood of success on the merits;
(2) whether the movant will suffer irreparable harm absent the injunction;
(3) whether the balance of hardships favors the movant; and
(4) whether the injunction would be adverse to the public interest.

*Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018) (per curiam); *accord Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006).

These "are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)).

### B.

Plaintiff has no likelihood of success on the merits. In order to establish a likelihood of success on the merits, Plaintiff must demonstrate "more than a mere possibility of success." *Barron v. PGA Tour, Inc.*, 670 F.Supp.2d 674, 683 (W.D. Tenn. 2009) (citing *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 402 (6th Cir. 1997)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberative investigation." *Id.* But "[t]he showing necessary to establish a likelihood of success on the merits varies inversely with the other three factors." *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 WL 2370338, at *3 (E.D. Tenn. Aug. 15, 2006) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 2000)), *aff'd*, 246 F. App'x 969 (6th Cir. 2007).

The parties have briefed the likelihood of confusion between the names "Three Bridge Brewery" and "Three Bridges Distillery and Taproom." *Compare* ECF No. 5 at PageID.39–49, *with* ECF No. 15 at PageID.98–107. Yet a more potent question exists.

A mark is primarily geographically descriptive if, as perceived by potential purchasers, it describes the geographic origin of the goods. *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 594 (6th Cir. 1989) (citing *In re Nantucket, Inc.*, 677 F.2d 95, 99 (C.C.P.A. 1982)). "To further clarify whether the mark is primarily geographically descriptive, it is valuable to examine the possibility that the geographic term is 'minor, obscure, remote or unconnected with the goods.'" *Id.* (quoting *Nantucket*, 677 F.2d at 99).

Plaintiff's trademark appears geographically descriptive. The permissible inference to be drawn from the use of the term THREE BRIDGE in this instance is to describe the origin of Plaintiff's product. The term "Three Bridge" is often used to refer geographical locations; for example, less than a mile from Plaintiff's brewery is "3 Bridge Street." There is also a "Three Bridges Park," roughly 170 miles South of Plaintiff's brewery. Moreover, the apparent designer of Plaintiff's trademark has claimed that "[t]he Roman numerals in the Three Bridge logo represent the literal three bridges that cross the Menominee river separating Menominee, Michigan from Marinette, Wisconsin. The blue band, accordingly, represents the river." Ministry for Propaganda, *Three Bridge Brewing Co.*, https://www.ministryforpropaganda.com/art-direction-blog/2019/5/7/three-bridge-brewing-co [https://perma.cc/F4JM-LR49]. Similarly, Defendant's "name [Three Bridges] is a reference to Midland's Tridge." Courtney Soule, *Crafting Collaboration: Three Bridges Distillery and Taproom Makes Final Push for 2020 Open*, CATALYST MIDLAND (Feb. 6, 2020), https://www.secondwavemedia.com/midland/features/three-bridges-distilling-020620.aspx [https://perma.cc/JV54-S874]. Further, though "there is no

requirement that the challenger to a trademark demonstrate that the area is noted for the goods in question," *Appalachian Log*, 871 F.2d at 595, Michigan and Wisconsin—the states that Plaintiff's brewery serves—are both among the top 10 states most well known for their beer, Pat Evans, *All 50 States Ranked for Beer*, BEER CONNOISSEUR (Mar. 4, 2019), https://beerconnoisseur.com/articles/all-50-states-ranked-beer [https://perma.cc/AG2Z-NCJJ]. The obvious inference is that Plaintiff intended "Three Bridge" to refer to the area under the three bridges that connect Michigan to Wisconsin—especially considering that a primary characteristic differentiating beer is the water with which it is made.

"A trademark that is primarily geographically descriptive must have acquired secondary meaning to invoke the protection of the Lanham Act." *Appalachian Log*, 871 F.2d at 595. "Secondary meaning is proved when by a preponderance of the evidence it can be determined that the attitude of the consuming public toward the mark denotes 'a single thing coming from a single source.'" *Id.* at 596 (quoting *Aloe Cream Lab'ys v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970)). "Direct proof of secondary meaning is difficult to obtain." *Id.* (citing *Aloe Cream*, 423 F.2d at 849). "Absent direct proof, this Court must draw reasonable inferences from evidence of long-term usage, from considerable effort and expenditure of money toward developing a reputation, and good will for the trademark." *Id.* (citing *WLWC Centers, Inc. v. Winners Corp.*, 563 F. Supp. 717, 723 (M.D. Tenn. 1983)).

Although Plaintiff did not advance the following facts to argue for a secondary meaning of "Three Bridge," Plaintiff states that it "has spent thousands of dollars advertising the goods sold under its trademarks, has a point of sale program with over two thousand customers, has poured over forty thousand beers, [and] has recorded over nineteen thousand customer transactions." ECF No. 5 at PageID.41. "Sales volume, though relevant, is not necessarily sufficient to indicate

recognition of the mark by purchasers as an indication of the source." *Appalachian Log*, 871 F.2d at 596 (citations omitted).

Plaintiff's evidence of advertising is similarly non-dispositive. Plaintiff adds that it "has attended five tradeshows across the State of Michigan[] and has received over nine hundred ratings of its beers on Untappd.com." ECF No. 5 at PageID.41. "Advertising expense also is relevant but will not, standing alone, establish secondary meaning." *Appalachian Log*, 871 F.2d at 596 (citing *Sci. Applications v. Energy Conservation Corp. of Am.*, 436 F. Supp. 354, 361 (N.D. Ga. 1977)). Although advertising expenditures are required to "merely survive" in the competitive market, advertising expenditures cannot be used to prove secondary meaning. *WLWC Centers*, 563 F. Supp. at 724. By contrast, "*extensive* advertising that results in consumer association with a single source can establish secondary meaning." *Appalachian Log*, 871 F.2d at 596 (citing *Scott Paper Co. v. Scott's Liquid Gold Inc.*, 589 F.2d 1225, 1228 (3rd Cir. 1978)). The duration of use of the mark can establish secondary meaning if the duration is more than a relatively short period. In *WLWC Centers*, the Sixth Circuit determined that three years was insufficient to prove that the mark had acquired secondary meaning. *WLWC Centers*, 563 F. Supp. at 723. Plaintiff has apparently used its "Three Bridge" mark in commerce for roughly six years. *See* ECF No. 5-2 at PageID.54. But Plaintiff has offered no additional evidence to establish the secondary meaning of its mark, and Defendant has apparently used its "Three Bridges" mark for roughly the same amount of time—albeit since a later date. *See* ECF No. 15-6 at PageID.146.

The secondary meaning of Plaintiff's mark is also questionable due to the presence of at least two other breweries with the same name. There is a "3 Bridges Brewing" in South Venice, Florida. *See* Wade Tatangelo, *Three Bridges Brewing Anniversary Party*, Herald-Tribune (Apr. 3, 2018, 2:36 PM), https://www.heraldtribune.com/story/entertainment/events/2018/04/05/three-

bridges-brewing-anniversary-party-in-venice/12819358007/ [https://perma.cc/P38V-6QRM]. And there appears to be a "Three Bridges Brewing Company" registered in Lincoln, Nebraska. *See* opencorporates, *Three Bridges Brewing Company LLC*, https://opencorporates.com/companies/us_ne/2012163525 [https://perma.cc/G5BD-LS7F].

For those reasons, Plaintiff's alleged trademark is likely not a "protectable" mark under the Lanham Act. *See, e.g.*, *Detroit Coffee Co. v. Soup For You, LLC*, 396 F. Supp. 3d 754, 766–67 (E.D. Mich. 2019).

### C.

Plaintiff must show that irreparable harm is "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Harm "is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). "Although this inquiry involves balancing multiple factors, 'the *existence* of an irreparable injury is mandatory.'" *Ohio v. Becerra*, No. 21-4235, 2022 WL 413680, at *2 (6th Cir. Feb. 8, 2022) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)).

Plaintiff only argues that "irreparable injury is presumed because Plaintiff has demonstrated the likelihood of confusion resulting from Defendant's use of the infringing mark." ECF No. 5 at PageID.49. As explained, the likelihood of confusion seems inapt in this case due to the apparent geographically distinct nature of Plaintiff's mark and the lack of a secondary meaning. *See* discussion *supra* Section II.C.

Thus, Plaintiff has not demonstrated irreparable injury.

**D.**

In assessing the potential harm to Defendants, no single factor is dispositive. Rather, courts are to balance the different factors and the "weighing and balancing of the equities is overruled only in the rarest cases." *See United States v. Szoka*, 260 F.3d. 516, 523 (6th Cir. 2001).

Plaintiff argues that, absent an injunction, it "would be harmed by having a competitive company offering an identical product under the same name[, which] would harm the business prospects, goodwill, and reputation of the Plaintiff." ECF No. 5 at PageID.50. Defendant responds that an injunction would require it to completely shut down its business, ceasing all revenue. ECF No. 15 at PageID.108–09.

The balance of hardships does not favor Plaintiff. Just as Plaintiff would lose its trademark absent an injunction, so too would Defendant if an injunction issues. So the injunction nullifies itself in this regard. Further, the risk of Plaintiff losing business seems highly unlikely, as the parties' storefronts are located roughly 350 miles away from each other. By contrast, enjoining Defendant, which only recently opened its storefront, would essentially cause it to lose all business after investing much to open and begin operations.

For those reasons, this factor leans against issuing an injunction.

**E.**

The public interest is neutral in this case because both parties serve different "publics." Further, other than Plaintiff's allegations, there is no record evidence of customer confusion. If anything, the public would be better served by keeping open a dine-in pub that provides revenue to its town and honors a nearby landmark.

Because the factors score 3–1–0 favoring Defendant, Plaintiff's Motion for a Preliminary Injunction will be denied.

## III.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Preliminary Injunction, ECF No. 5, is **DENIED**.

Dated: April 22, 2022                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge